UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Jeffrey Peterson, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 11-1330 |
| | ) | |
| Wright Medical Technology, Inc., | ) | |
| Defendants | ) | |
| | ) | |

**ORDER**

Now before the Court is the Plaintiff's Motion to Compel (#32) and the parties' joint Motion (#39) to extend the deadline for filing Daubert motions. I have carefully considered the parties' positions. As stated herein, the motion to extend is granted, and the motion to compel is granted in part, denied in part and moot in part.

I. INTRODUCTION

This lawsuit alleges that Plaintiff was injured as a result of a defect ("micromotion and fretting corrosion") in the titanium modular neck component of a Wright Medical Profemur Hip System, an artificial hip device. The defect is alleged to have caused the neck to fracture into two pieces after implantation in Plaintiff. in 2008. This resulted in explant surgery in December of 2010.

There are twelve different but similar models of the neck component, all of which allegedly had the same defect with the same failure. The FDA cleared distribution and use of the Profemur Hip System in 2000; all twelve models of the neck component were included in the FDA application. All models come with the same instructions for use, and it is alleged that Wright's marketing materials make no material distinctions among the twelve models. Plaintiff alleges that Wright had notice of fractures in all twelve models

and that its internal reaction addressed the problem as one with the entire product line (i.e. all twelve models) and not a separate issue for each model. The "fix" for the problem - using material other than titanium – is common to all the different models. The experts on both sides have rendered opinions on the necks as a product line, not model by model.

There are a number of other lawsuits about the same problem with this same device, one of which, *Wollam v. Wright*, 10-3104 (D Col), involved extensive discovery (12,000 pages of documents produced by Wright, designated as "confidential" and protected by a protective order in that case) and 10 videotaped depositions of Wright employees. In all of the cases, Howard and Howard is "national counsel" for Wright. Plaintiff's counsel in the instant case, George McLaughlin, is counsel for plaintiff in several but not all of the other cases. He was not counsel in *Wollam*, supra.

In the case at bar, Plaintiff has served interrogatories and requests for documents on the Defendant. In response, Defendant raised objections to Interrogatories 5, 6 and 14 and to Requests for Production 9, 10, 15, 22, 29, 46, 47 and 51. The parties have conferred in good faith in efforts to resolve disputes about these objections but have been unable to do so. This Order follows.

## II. MOTIONS TO COMPEL GENERALLY

The federal discovery rules are to be construed broadly and liberally. *Herbert v Lando,* 441 U.S. 153, 177 (1979); *Jefferys v LRP Publications, Inc.,* 184 FRD 262, 263 (ED Pa 1999). Parties are allowed to obtain discovery regarding any unprivileged matter relevant to the claim or defense of any party. FRCP 26(b)(1). Relevant information need not be admissible at trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence. *Id.* District courts have broad discretion in matters

relating to discovery. *See Brown–Bey v United States,* 720 F2d 467, 470–71 (7th Cir 1983); *Eggleston v Chicago Journeymen Plumbers' Local Union 130,* 657 F2d 890, 902 (7th Cir 1981); *see also, Indianapolis Colts v Mayor and City Council of Baltimore,* 775 F2d 177, 183 (7th Cir 1985) (on review, courts of appeal will only reverse a decision of a district court relating to discovery upon a clear showing of an abuse of discretion).

"[I]f there is an objection the discovery goes beyond material relevant to the parties' claims or defenses, the Court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible." FRCP 26(b)(1) Advisory Committee Notes, 2000 Amendment.

For discovery purposes, relevancy is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Chavez v DaimlerChrysler Corp.,* 206 FRD 615, 619 (SD Ind 2002) (quoting *Oppenheimer Fund, Inc. v Sanders,* 437 US 340, 351, 98 S Ct 2380, 57 LEd2d 253 (1978)).

The party opposing discovery has the burden of proving that the requested discovery should be disallowed. *Carrigan v K2M Inc.*, 2011 WL 1790423 at *4 (CD Ill), citing *Etienne v Wolverine Tube, Inc.,* 185 FRD 653, 656 (D Kan 1999); *Golden Valley Microwave Foods, Inc. v Weaver Popcorn Co.,* 132 FRD 204, 207 (ND Ind 1990); *Flag Fables, Inc. v Jean Ann's Country Flags and Crafts, Inc.,* 730 FSupp 1165, 1186 (D Mass 1989). The objecting party must do more than simply recite boilerplate objections such as overbroad, burdensome, oppressive or irrelevant. See, for example, *Telco Group Inc v*

*Ameritrade Inc.*, 2006 WL 560635 (D Neb); *Roesberg v Johns-Manville Corp*., 85 FRD 292, 297 (D Pa 1980).

If the basis for an objection is lack of relevance, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure ." *Id; Sheehan v Kruger*, 2012 WL 6049007 (ND Ind).

Similarly, if the objection is undue burden, the party must substantiate the objection with affidavits or other evidence revealing the nature and extent of the burden. See, for example, *ANGEL Learning Inc v Houghton Mifflin Harcourt Publishing Co*., 2010 WL 2243367 at *2-3, citing *Box v A&P Tea Co.*, 772 F2d 1372, 1379 n.5 (7th Cir 1985).

If the objecting party fails to sustain its burden, Rule 37 allows the Court to enter an order compelling the party to comply with discovery requests. FRCP 37. See, *Gateway Sys., Inc. v Chesapeake Sys. Solutions, Inc.*, 2011 WL 1312168 (ND Ill).

### III. INTERROGATORIES

A. Interrogatory 5

This interrogatory asks Wright to identify everyone who markets or distributes Wright hip devices who may also have attended any of Plaintiff's doctor or hospital visits. Wright objected that this interrogatory sought "information that is equally or already within Plaintiff's possession, control and/or knowledge as it would be reflected in Plaintiff's own medical records."

It is not clear from anything filed by the parties that this information would in fact be contained in Plaintiff's medical records. To the extent that it is, obviously Plaintiff already has those records and they need not be produced by Wright. The objection does *not* state, however, that Wright knows of no other method to obtain the information. For this objection to stand, Wright must affirmatively state that it has no other way to obtain this information – no records, no employees or agents whose job entailed attending office or hospital visits of Peterson's physicians or surgeons, no information in its possession or control that would shed light on this question. Wright is therefore directed to supplement its response to this interrogatory.

B. Interrogatory 6

This interrogatory is very similar to Interrogatory 5 above. Plaintiff asks for identification of any of its employees, agents or representatives who were present for any part of Plaintiff's implant or explant surgery. The same objection was stated, and the same ruling applies. Wright must supplement its response to this interrogatory with an affirmative statement.

C. Interrogatory 14

In this interrogatory, Plaintiff asks Wright to define the term "heavyweight patients," for two periods of time: before and after 3/27/08. Wright objected that the interrogatory is "vague" because "it does not define" this phrase or put it in context that would allow for a proper response. Plaintiff points out that Wright uses this term in its instructions for use and in letters to customers, distributors and physicians. Plaintiff asserts that the phrase is used in depositions taken in the related lawsuits.

There is nothing vague about this interrogatory. The context is obviously bounded by this litigation, and if Wright uses the term in its literature or its culture, then a request for a definition of the term is reasonable. Wright is directed to define the term.

## IV. REQUESTS FOR PRODUCTION OF DOCUMENTS

### A. Request for Production 9

Plaintiff seeks transcripts of the 10 depositions of Wright employees taken in those other lawsuits. The question of whether such depositions may be used in this case was raised in a separate motion, a motion that was jointly withdrawn because the parties had "resolved the issues raised in that motion." (Doc. #38, ¶4). I have reviewed that withdrawn motion and find that the parties' resolution of the issues raised therein moots the issues raised as to this Request.

### B. Request for Production 10

In this Request, Plaintiff seeks copies of any and all "expert reports" produced by any party in any of the related lawsuits or otherwise produced outside of formal litigation. The interrogatory concluded with the following language:

> This request is intentionally not limited to expert reports produced in filed actions in courts or tribunals, but seeks report [sic] from all experts, in all fields of expertise, regardless of whether a court action was filed. It is also intended to seek reports authored on behalf of both claimants/plaintiffs and also reports authored on behalf of Wright.

Wright interposed numerous objections to this interrogatory. Those objections, along with my rulings as to each, follow:

***Incomprehensible***:

While less than artfully stated, this Request is far from totally incomprehensible. It is clear what an expert report is, at least within the context of litigation. If Wright has in its

possession expert reports from prior or other related lawsuits, this Request is obviously asking for those reports.

Outside the context of litigation, however, the meaning of "expert report" is not clear. One might be able to read between the lines, but the Defendant should not have to do so. This is not a valid objection to the entire Request, but it  raises enough questions about what an "expert report" is when no court action was filed that the objection is sustained to that extent.

***Seeks confidential information:***

To the extent confidential information is sought, the protective order in place in this case is adequate to protect the confidentiality.

***Seeks information about components not the ones implanted in Plaintiff:***

In its response to the Request, Wright made this objection with no explanation. In its response to the Motion to Compel, Wright explains that it made this objection to preserve the objection for ruling *at trial* but nonetheless produced responsive documents. The Court does not believe that Wright's discussion in its response to the motion was intended to address this particular Request, because as far as the Court can tell, no expert reports at all have been produced.  If this is incorrect and expert reports were produced subject to this "relevance" objection, then the Court's ruling on this Request can be ignored, with the following exception.

Plaintiff's motion itself says nothing directly apposite to this assertion. Plaintiff has, however, complained generally about the manner in which Wright produced the documents. According to Plaintiff, the production did not identify which of the 8600

documents were responsive to each Request. Wright disputes this by pointing out that its response refers to the Bates numbers on each page.

Wright's response to this Request contains no reference to Bates numbers. Perhaps it was during the good faith discussions that followed the original response that Bates numbers were identified, but the Court cannot ascertain this from the pleadings and exhibits now before it. To the extent that Wright produced expert reports notwithstanding its objections but failed to make such identification of responsive documents, it must do so at this time.

***Seeks information for an unlimited time period***:

It is true that the Request is temporally unlimited, but that can easily be corrected by the Court. Plaintiff makes two points. First, these devices were first manufactured in 1985, and Wright uses all models going back to 1985 in calculating its historic failure rates. Second, there was no litigation about these devices until 2006.

Plaintiff's surgery took place on March 27, 2008. Production of expert reports going back to January 1, 2006, more than 2 years before surgery, should provide Plaintiff with enough information to determine what Wright knew at the pertinent time. The allegations in the complaint do not suffice to justify going back 20 additional years to 1985. If Plaintiff's review of the reports from 2006 to the present raises questions that necessitate going back further in time, the question can be reviewed upon such a showing

Plaintiff also seeks expert reports going up to the present date. Defendant has provided no basis for limiting the time frame at the back end. In fact, considering the allegations that Wright had feasible alternatives, some progression of expert reports would seem appropriate. Plaintiff's explant surgery occurred in December of 2010.

Expert reports dated up until December of 2011 would be reasonable. If there are specific reasons that Plaintiff requires reports more current that that, an additional motion may be filed, specifically addressing the reasons.

***Seeks privileged information regarding other alleged patients***:

There are several problems with this objection. First and foremost, Defendant failed to provide a privilege log as required by Rule 26. Second, the identity of the patients can be redacted, thereby easily resolving privacy issues. Third, there is a protective order in place in this case that is sufficient to safeguard privacy as to these reports. Finally, by revealing their information to the experts, the patients may well have waived any privilege. Privilege provides no basis for Wright's refusal to answer this question.

***Relevance***:

What experts have had to say about the component parts of Wright's hip replacement system certainly bears on both the Plaintiff's claim and the Defendant's defenses. Defendant's objection that the reports deal with different plaintiffs with different medical conditions, different doctors and different medical considerations does not go to relevance at all; these are, of course, valid subjects for cross examination should the reports be used at trial or in depositions. It has nothing to do with their discoverability.

***Protective orders:***

Wright suggests that these reports may be covered by protective orders issued by other courts in other cases. No such protective orders have been provided to this Court to support the suggestion, and more importantly, it seems unlikely to this Court that the protective orders would have covered reports authored by retained experts for use in

litigation. If the Court is incorrect about this, a motion for protective order in this case, limited to this issue and properly supported, may be filed by Defendant.

***Conclusion:***

None of the stated objections justify a complete refusal to produce any of these reports. The real question is whether Wright can be compelled to produce these reports to the Plaintiff in this case. Expert witnesses must provide a list of all other cases in which they have testified during the past 4 years. Rule 26(a)(2)(B)(v)[1]. Defendant asserts that the Rule precludes the production of anything more; the actual reports cannot be compelled, and nothing – not even the list or the expert's identity - can be compelled beyond the 4 year time frame. No authority is cited for either of these propositions. The Rule sets out the mandatory minimum. Nothing prevents the Plaintiff from obtaining more than the minimum.

Defendant cites *Oklahoma v Tyson Foods Inc.*, 2006 WL 2862216 at *1-2 (ND OK), in which the court denied a motion to compel production of documents that were made available in a "similar poultry waste pollution lawsuit" in the same court, because there was nothing more than "surface similarities." Unlike pollution cases involving different farms in different watersheds, the crux of this case – and of the expert reports Plaintiff here seeks – is the neck component and the alleged fractures of that component. While there will be differences tied to the unique circumstances of the several plaintiffs, the similarities go deeper than just the surface. In fact, the court in *Tyson Foods* compared the case before it with *Snowden v Connaught Labs Inc.*, 137 FRD 325 (D Kan

---

[1] If Defendant intends to use any of these same expert witnesses in its defense of the case at bar, those experts must provide that information. In the context of this case, discovery was to have concluded on January 30, 2013, so these minimum disclosures should already be in Plaintiff's possession.

1991), a case involving a vaccine in which the parties were the same and the alleged injuries were similar. 2006 WL 2862216 at *2.

Defendant also points out that another court in one of the related cases was presented with this "identical request," the court viewed it as a fishing expedition for irrelevant information and described it as "cloned" or "piggy back discovery." *Wollam v Wright Medical Group Inc.*, 2011 WL 1899774 (D Col). In *Wollam*, the request was *not* identical to the one now under consideration. The plaintiff in that case sought all documents, all things, all deposition transcripts, all expert reports and all other discovery responses in any action involving any artificial hip from a Wright entity wherein the modular neck fractured.

The court properly noted that "cloned" discovery is "not necessarily" relevant and discoverable. *Id* at *1. Then the court put the burden on the plaintiff to show that all the modular necks are substantially similar and experienced similar failures. Considering that discovery was still in progress it is not surprising that the plaintiff did not meet that burden. With all due respect to the *Wollam* Court, the burden is on the objecting party to demonstrate that the discovery sought is objectionable. The very purpose of discovery is to give the parties the opportunity to learn what their opponents know about the issues in the case.

In this case, the "cloned" discovery seeks information that is relevant to plaintiff's claims and defendants' defenses and that it is reasonably calculated to lead to the discovery of admissible evidence on the questions of what Wright knew and when Wright learned what it knew about the defect alleged in the complaint and the failure that allegedly resulted from that defect. Putting the burden on the Plaintiff at this stage of

discovery is not in the spirit of Rule 26 nor is it consistent with case law that governs this Court.

I find that Defendant has failed to carry its burden of proving that the requested discovery should be disallowed in its entirety. Prior expert reports prepared on or after January 1, 2006, for Wright by its retained experts (or by Wright employees whose job duties include offering expert testimony) for use in litigation about any or all of the 12 models of neck components are discoverable and must be produced. The reports shall be redacted of all patient-specific identification and shall, until further order of the Court, be subject to the protective order in this case.

As mentioned above, Defendant's insistence on a 4 year time frame is without merit. The four-year disclosure requirement is the minimum requirement; it is not a magic number. In fact, when divorced from the immaterial provision in Rule 26, it is an arbitrary number, bearing no relationship to the development of facts or the need for evidence in a particular situation. In the instant case, Plaintiff's hip replacement surgery took place on March 27, 2008. The first litigation about this hip replacement system began in 2006, just 2 years before that surgery. Production of expert reports going back to January 1, 2006 should provide Plaintiff with enough information to determine what Wright knew at the pertinent time. Without a further showing by the Plaintiff, I see no need to go back all the way to 1985. If Plaintiff's review of the reports from 2006 to the present raise questions that go back further in time, the question can be reviewed upon such a showing.

Other reports, however, are more problematic. Plaintiff has not explained any basis for obtaining expert reports prepared *for other plaintiffs* in related litigation. Those

plaintiffs are not parties herein, and the reports they commissioned are more properly obtained from counsel for those other plaintiff s rather than from Wright. Likewise, because of the ambiguity about the meaning of "expert report" when the phrase is used outside the context of litigation, I conclude, that Plaintiff has not properly asked for any extra-litigation or pre-litigation reports.

Defendant shall supplement its response to this Request by producing all expert reports it commissioned from Jan. 1, 2006 to Dec. 31, 2011, for use in litigation. If those reports have already been produced, Defendant shall provide the Bates numbers of the pertinent pages.

C. Request for Production 15

In this request, Plaintiff asks Wright to produce a "copy of each and every letter sent to patients who received Wright modular necks, informing them of any changes to the instructions for use, suggested warnings or limitations on the use, or any increased risk of failure." Wright raised numerous objections to this interrogatory. Those objections, along with my rulings, follow. Before making those rulings, I note that if Wright sent no such letters, its proper response would have been an explicit denial of the implication that letters were sent. If Wright has no such letters, it must supplement its response to say so.

***Wright does not have "patients.":***

This is a semantic objection without any substantive merit. The Request does not specify "Wright's patients," and it is clear from context that Plaintiff wants letters that Wright sent to the patients of any physicians who implanted the device. This choice of words does not provide a legitimate basis for claiming that the Request is "vague."

***Request seeks documents not in Wright's possession or control:***

If Wright sent such letters, then those letters – the text of the letters and, if the information is retained, the identity of the patients who were sent them – are certainly in Wright's possession or control. This objection has no merit.

***Request seeks documents already in Plaintiff's possession:***

Plaintiff states that he received no such letter, so there is no document responsive to this request that is in his possession.

***Subsequent remedial measures:***

This objection is based on FRE 407, which states that such evidence of such measures is not admissible for proof of negligence, culpable conduct, defect or need for warning. Such evidence is admissible to show feasibility of precautionary measures.

In this lawsuit, Plaintiff has alleged that Wright had knowledge of the defect but failed to take precautionary measures to warn surgical candidates or recipients of potential problems and to advise about precautionary measures, so the Request is relevant. The question during discovery is *not* whether relevant matter sought is admissible at trial; it is whether it is reasonably calculated to lead to the discovery of admissible evidence. Given that feasibility of precautionary measures has been raised as an issue, letters that Wright may have sent regarding changes in use, warnings, limitations on use, or risk of failure could reveal pertinent and admissible knowledge about such an alternative. This Request meets Rule 26's standard.

***Conclusion:***

The objections raised are denied. Defendant shall respond to this Request.

D. Request for Production 22

In this Request, Plaintiff seeks copies of emails and any attachments referenced in those emails of any Wright employees about micromotion, fretting, corrosion, fracture or breakage of the modular necks. Wright objected to this interrogatory on several grounds. Those objections, along with my rulings, are as follows:

**Overbroad and unduly burdensome as it is not temporally limited:**

The time frame is, for the present, limited to the same time period discussed above, namely beginning on January 1, 2006 and continuing to December 31, 2011. If that proves insufficient, Plaintiff may re-raise this issue, clearly showing the need for more information.

**Relevance:**

Defendant quotes the language directly from Rule 26's definition of the proper scope of discovery. There is not one word in the objection or in the memo that elaborates on the objection. Given the subject matter of this litigation, the Request is relevant and reasonably likely to lead to admissible evidence.

**Confidentiality:**

To the extent confidential information is sought, the protective order in place in this case is adequate to protect the confidentiality.

**Seeks information about components not the ones implanted in Plaintiff:**

The question whether evidence relating to other models of the components implanted in Plaintiff is admissible *at trial* is not the question before the Court at this time. Wright acknowledges this, stating in its response that it made this objection to preserve it for ruling at trial but nonetheless produced responsive documents.

Plaintiff's motion itself says nothing directly apposite to this assertion. Plaintiff has, however, complained about the manner in which Wright produced the documents. According to Plaintiff, the production did not identify which of the 8600 documents were responsive to each Request. Wright disputes this by pointing out that its response refers to the Bates numbers on each page.

A review of Wright's responses to the several Requests in which this objection was raised contains no reference to Bates numbers. Perhaps it was during the good faith discussions that followed the original response that Bates numbers were identified, but the Court cannot ascertain this from the pleadings and exhibits now before it. To the extent that Wright produced documents notwithstanding its objections but failed to make such identification of responsive documents, it must do so at this time.

***Attorney client privilege:***

If there are documents responsive to this Request that are indeed privileged, the proper response to the Request would have included a privilege log. FRCP 26(b)(5)(A). As no log was produced, this objection has not been preserved.

***Seeks privileged information regarding other alleged patients:***

There are several problems with this objection. First and foremost, Defendant failed to provide a privilege log as required by Rule 26. Second, the identity of the patients can be redacted, thereby easily resolving privacy issues. Third, there is a protective order in place in this case that is sufficient to safeguard privacy as to these reports. Finally, by revealing their information to the experts, the patients may well have waived any privilege. Privilege provides no basis for Wright's refusal to answer this question.

***Conclusion***:

The Request is limited to the time frame stated. All other objections are without merit and are denied.

 E. Request for Production 29

Pursuant to a stipulation filed by Plaintiff (Doc. #34), Plaintiff has withdrawn his motion to compel as to this Request. To that extent, this motion is MOOT.

 F. Request for Production 46

Plaintiff asked for copies of minutes of any meeting of Wright's Board of Directors where the issue of modular necks was discussed. All of the objections raised by Wright have been discussed above and ruled on. Those same rulings apply to this Request. The time frame is limited by this Order; the request seeks information reasonably calculated to go to the question of Wright's knowledge so it is discoverable. Confidentiality questions can be mitigated by redaction and are further addressed by the protective order in place. Plaintiff's discovery is not limited to the specific model implanted in him.

 G. Request for Production 47

In this Request, Plaintiff asks for correspondence and documentation between any Physician and Wright "where a physician received compensation or agreed to become a spokesperson, educator, trainer or advocate … or agreed to write an article, speak, train, educate or advocate on behalf of any Wright Conserve or Profemur hip product."

Plaintiff's only response to the various objections raised by Wright was to rely on its previously stated positions and to conclude that "Wrights [sic] effort to promote the use of these products through physicians it paid to do so is discoverable." I disagree. This

has little if anything to do with the alleged failure of the modular neck or with Wright's

knowledge of the alleged defect or efforts to find a feasible alternative. The relevance

objection to this request is sustained.

 H. Request for Production 51

This Request deals with Plaintiff's efforts to obtain substantiation for a claim

made in "certain Wright Medical Publications dated after the year 2000." After quoting

the alleged claim, Plaintiff asks that Wright produce documentation that supports the

portion of the claim that "coupling between the modular neck and femoral implant

guarantees structural reliability, absence of significant micromovement and absence of

fretting corrosion."

Wright objected as follows:

> Wright Medical objects to this Request to the extent it seeks information
> protected by the work-product and attorney-client privileges. Wright
> Medial further objects to this Request on the grounds that the Request is
> vague and undefined because it fails to identify from which publications
> the language purported quoted herein is derived. Wright Medical also
> objects to this Request to the extent that this Request seeks post-explant
> information which is irrelevant and unlikely to lead to the discovery of
> admissible evidence and is over broad and unduly burdensome.

***Privilege:***

Once again, this assertion is not supported by a privilege log. The objection has

not been preserved and is denied.

***Vague and undefined:***

This objection is, as Plaintiff describes it, disingenuous. Plaintiff quotes the claim.

If Wright never made that claim, then it should say so. If Wright made the claim, then it

knows what publications contained the claim. The request is not for Wright to identify

the publications but to produce supporting documentation, so the failure of Plaintiff to identify the publications does not make the Request vague. This objection is denied.

***Post-explant information is irrelevant and not discoverable:***

If Wright made this claim *following* Plaintiff's explant surgery, it is hard to see how that claim or its supporting documentation is relevant to this case. Plaintiff's motion makes no effort to explain the relevance and it is not obvious. The objection is sustained.

***Overbroad and unduly burdensome:***

This objection is not explained. This does not hark back to the objection that the time frame is unlimited, because the Request clearly identifies the claim as "dated after the year 2000." On the face of the Request, it does not appear either overbroad or unduly burdensome. Given the lack of a showing of burden by Defendant, the objection is denied.

***Conclusion:***

With the exception of the time frame of this request, the objections are denied. Any of the requested documentation that predates January 1, 2011, shall be produced.


V MOTION TO EXTEND

The parties state that they will be mediating this case in March and would like to avoid the costs associated with Daubert motions in the event they are successful in reaching a resolution of this matter. They ask that the deadline be extended to April 15. The motion is granted.

## VI. CONCLUSION

As stated herein, the motion to extend (#39) is GRANTED. The deadline for filing *Daubert* motions is extended from February 28 to April 15, 2013, so that the parties may engage in mediation. Subsequent deadlines remain as presently scheduled.

The motion to compel (#32) is GRANTED IN PART, DENIED IN PART AND MOOT IN PART, as stated herein. Documents and interrogatory answers that are ordered herein shall be served at least 7 days before mediation begins, unless the parties agree that mediation would be more effective if compliance with this Order is delayed until after mediation is complete, in which case Defendant shall comply with this Order within 14 days after conclusion of mediation.

ENTERED: February 21, 2013

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE